LiA&amows, Judge,

delivered the opinion of the court:
Plaintiff, a veteran of World War II, sues for the difference between his pay as a rating specialist, GS-12, and his pay as an adjudicator, GS-9, from August 28, 1952, on the ground that his. reduction in force as a GS-12,. which necessitated his taking a position as a GS-9, was -illegal. Plaintiff further asks this court to reassign him to the position of rating specialist (occupational), in accordance with the terms of the Civil Service decision of June 20,1952.
A summary of the facts is as follows: Plaintiff, an employee of the Veterans’ Administration, Boston regional office, for more than ten years, was separated on June 1, 1952, in a reduction-in-force action, from the position of rating specialist (legal), GS-12. His first position with that agency was as adjudicator, GS-9; in 1945 he was *573 promoted to the position, of rating specialist (legal), GS-12, as a member of one of tbe rating boards. A rating ■board consists of three members: rating specialist (legal), rating specialist (occupational), and rating specialist (medical). The primary function of a rating board is to consider veterans’ disability claims for possible service connection, and to evaluate the degree of disability. ■ The aforementioned reduction-in-force action .eliminated one of the nine boards then functioning, necessitating the separation of three board members. Those members reached for separation were determined on the basis of retention registers which were maintained.
Prior to April 15, 1952, the legal and occupational members of rating boards in the Boston regional office performed the duties of both positions interchangeably, without regard to their civil service classification. Because of this, a single retention register was maintained for ■ nonmedical members of the boards, i. <?., legal and occupational.' On this register was merged the names of all legal and occupational board members in the order of their respective retention priority, for reduction in force purposes. The retention register for medical members of boards was separate and distinct, listing only medical members, according to their retention priority.
On April 15,1952, after receipt of letter dated March 28, 1952, from the central office of the Veterans’ Administration, Washington, D. C., announcing the adjustment in the table of organization, requiring the elimination of one board, the Boston office issued a memorandum stating that thereafter it proposed to maintain separate retention registers for legal and occupational members, for reduction-in-force purposes, instead of the merged, single register for both classifications, legal and occupational, theretofore maintained.
Shortly before May 1, 1952, an occupational member of one of the rating boards resigned to enter military service, leaving only two board members to be eliminated.
On May 1, 1952, plaintiff, a legal member, and a medical member were issued reduction-in-force notices, terminating their positions, effective June 1, 1952. On that date, plaintiff had a total of 11 retention credits, and had a permanent classification, PA-1, in the position of rating specialist *574 (legal), grade GS-12. PA-1 is a symbol meaning a permanent civil service employee with a veteran’s preference. Also on that date, May 1,1952, there was retained a board member, Mr. Emlyn Mitchell, then occupying the position of rating specialist (occupational), grade GS-12, in temporary status TA-1, and who had 10 retention credits. TA-1 is a symbol which refers to temporary or indefinite status held by a civil sen ice employee with a veteran’s preference.
When plaintiff received notice of his separation on May 1, 1952, he was informed by a personnel officer that he would be reassigned to position of authorization officer, GS-11. He protested this reassignment to lower grade, and claimed right of reassignment to position of rating specialist (occupational) , GS-12, then occupied by Mr. Mitchell in a temporary status, TA-1, who was in a lower retention group, and who had fewer - retention points than plaintiff. Plaintiff contended he was qualified to perform duties of that position, having performed them interchangeably with his duties of rating specialist (legal) as a member of a rating board for seven years, and other experience. Plaintiff took an appeal to the First U. S. Civil Service Regional Office on May 2, 1952. On May 19,1952, he accepted the position of authorization officer, GS-11, under protest, reserving his right of appeal which had already been entered. A hearing was held on June 3,1952.
On June 20,1952, plaintiff’s appeal was sustained, holding, among other findings, that
* * * It is our view that because of the manner in which the Boards have operated Mr. Kelly is qualified to assume the duties of the position of Rating Specialist, Occupational, and to perform those duties without the need for special training; that he has the necessary background to enable him to be an occupational consultant to the other board members as contemplated in the revised position description by virtue of his background in the Employment Service and as a board member for so long a period of time while Legal members and Occupational members served interchangeably. It is accordingly the decision of this office that Mr. Kelly’s reassignment involving' a reduction in grade was not a reasonable one and cannot be approved. It is therefore recommended that he be restored to his former position *575 retroactively to the date of his change to lower grade; and if he may not be properly retained therein, that he be considered for reassignment in accordance with Section 20.9 and the contents of this letter. Yonr attention is kindly invited to the provisions of Section 20.15 of the Eetention Preference Regulations which makes the recommendation of this office mandatory unless further appeal is made to the U. S. Civil Service Commission, Washington, D. C., within seven (7) days from the date of receipt of this letter. Please notify this office of action taken within seven (7) days.
The Boston regional office appealed on June 25,1952, from the foregoing decision but was directed by the Veterans’ Administration, Washington, D. C., to abandon the appeal and abide by the decision. Accordingly, the Boston regional office gave written notice on July 10, 1952, that it had abandoned its appeal.
The officials of the Boston regional office did not agree with the decision that plaintiff was qualified to perform the duties of rating specialist (occupational) and made no effort to reassign him to that position. They were completely aware of the facts that plaintiff could not, because of the personnel ceiling that had been established by the table of organization on June 1, 1952, be reassigned to his former position and that if he were so assigned, he could not be properly retained therein. However, on July 9, 1952, the day prior to withdrawal of their appeal, in a telegram to the Central Office of the Veterans’ Administration, Washington, D. C., it requested authority to increase the ceiling of the Adjudication Division by one (1), in order to establish an interim position of rating specialist (legal), GS-12, for a period of 30 days in order to “restore” plaintiff to position of rating specialist (legal), purportedly in compliance with decision of June 20,1952, of the First Civil Service Regional Office. This request was repeated in a subsequent telegram of July 16, 1952. Meantime, on July 14, 1952, Mr. Mitchell who had been retained in temporary status, TA-1, in the position of rating specialist (occupational) since, and before, May 1, 1952, was converted or promoted from temporary status, TA-1, to permanent status, PA-1, by the Boston regional office, which took action under the general authority *576 of the Whitten. Eider. On June 5, 1952, section 1310 of the Supplemental Appropriations Act, 1952 (65 Stat. 736, 757, as amended, 66 Stat. 122) was amended to permit any agency to promote an employee permanently to a position under certain conditions. In accordance with that act (known as the Whitten Eider) the central office of the Veterans’ Administration on July 11, 1952, sent a telegram to its various regional and other offices, stating that the Administrator had approved permanent grade conversions of all the employees who were serving under indefinite promotions, in retention group TA-1 on July 14,1952, in certain specified grades, including grades GS-11 and 12. Pursuant to this authority, Mr. Mitchell’s indefinite promotion to rating specialist (occupational), GS-12, was converted front indefinite to permanent, and his retention subgroup was changed from TA-1 to PA-1.
Finally, the Deputy Administrator of the Veterans’ Administration authorized an increase, on July 21,1952, in the personnel ceiling to provide for one additional position of rating specialist (legal), GS-12, in the Boston regional office for a period of 60 days. On the following day, July 22,1952, plaintiff was informed by the personnel director of the Boston office that he would be reassigned to the newly created position of rating specialist (legal), retroactively to June 1, 1952, in compliance with the decision of June 20,1952, of the Civil Service Commission; that this position would be eliminated on August 27, 1952, and plaintiff would then be reassigned to the position of adjudicator in grade GS-9, which was three grades lower.
Two days later, on July 24,1952, when plaintiff was temporarily restored to duty as a legal rating specialist (though he was then unaware of such action until notified the following day), the authorization officer in grade GS-11, whom plaintiff had replaced on May 29,1952, was restored to that position as authorization officer in grade GS-11; his promotion to that position was converted from indefinite to permanent, and his retention subgroup was changed from TA-1 to PA-1. Eetention registers were prepared the next day, July 25,1952, noting these changes.
*577 On July 25,1952, plaintiff was called into the office of his superior, the adjudication officer, and was handed two notices: the first, which was dated July 24, 1952, the previous .day, stated that plaintiff was restored to duty, effective June 1,1952, as rating specialist (legal) in grade GS-12, in accord- . anee with Civil Service letter of June 20, 1952; the second, ,a reduction-in-force notice dated July 25, 1952, stated that the plaintiff would be separated from his position as rating ■ specialist (legal) at the close of business on August 27,1952. As a result of these actions, the reduction-in-force notice of May 1, 1952, was cancelled and the plaintiff was paid retro- . actively to June 1, 1952, as rating specialist (legal), GS-12. The duration of this temporary position was 2 months and 27 days.
Under prqtest, reserving his right of appeal, plaintiff ■ accepted the new assignment. On August 28, 1952, he was given notification of personnel action showing his change .of position from rating specialist (legal), GS-12, to adjudicator, GS-9, and a change in salary from $7,840 per annum to $5,810 per annum. He has remained in, and is still in, <that position.
On July 25,1952, when plaintiff was notified that he would be separated from his temporary position as rating specialist (legal) at the close of business on August 27,1952, the personnel officer of the Boston office prepared a retention register for rating specialist (legal), showing that plaintiff was number nine on the list and, as already stated, the number •of rating specialists (legal), which the Boston office was authorized to employ, was eight.
As a result of the promotions described hereinbefore, the new retention register for occupational specialists showed that Mr. Mitchell was then in retention subgroup PA-1. Likewise, the new retention register for authorization officers in grade GS-11 showed that the employee whom plaintiff had replaced on May 29, 1952, was also in retention subgroup PA-1. Therefore, plaintiff was advised that he could not “bump” either of these employees and that the best offer the Boston regional office could make him at that time was •the position of adjudicator in grade GS-9.
*578 Plaintiff appealed in writing to the first region of the Civil Service Commission in Boston, Massachusetts. In his appeal, plaintiff contended, in substance, that the Veterans’ Administration had not complied with the Civil Service Commission decision of June 20,1952, because it was known at the time the decision was rendered that he could not be properly retained in his former position of rating specialist (legal); that it was incumbent upon the Veterans’ Administration to assign him to the position of rating specialist (occupational) since he was in a higher retention group than a rating specialist in a TA-1 lesser group; that the Civil Service Commission had found that he was qualified to perform the duties of rating specialist (occupational) without the necessity of special training, and that the action of the Veterans’ Administration in securing a temporary increase in the table of organization for the purpose of restoring him to his former position for a short period of time was tantamount to a circiunvention of the order issued by the Commission. Plaintiff’s appeal was denied on September 23, 1952, which held that corrective action had been taken and further that there could be no interchangeability between the position of rating specialist (legal) and rating specialist (occupational). A further appeal to the Board of Appeals and Review of the Civil Service Commission, Washington, D. C., was denied on May 29, 1952, stating that corrective action had been taken. On October 27, 1953, plaintiff made a further request for reconsideration and an opportunity to appear personally before the Commission, but this request was denied. Having exhausted his administrative remedies, plaintiff then commenced suit in this court on November 18, 1953.
The issue in this case is whether or not the action taken by the Boston regional office of the Veterans’ Administration properly complied with the June 20, 1952, decision of the Civil Service Commission.
When procedural requirements have been complied with, it has been held that the only basis for setting aside the action of an administrative officer is to show that the action was arbitrary, capricious, or so grossly erroneous as to imply bad faith. Love v. United States, 119 C. Cls. 486.
*579 The First U. S. Civil Service Kegional Office found that plaintiff was “no less qualified to hold the position of rating specialist, occupational” than any who had served in the office during the past seven years, and that plaintiff was qualified to assume the duties of the position of rating specialist, occupational. It further found that the plaintiff’s reassignment involving a reduction in grade was not a reasonable one and “cannot be approved.” The recommendation set forth in the decision was “that he be restored to his former position retroactive to the date of his change to lower grade; and if he may not be properly retained therein, that he be considered for reassignment in accordance with section 20.9 and the contents of this letter.” The decision went on to state that under the provisions of section 20.15 of the retention preference regulations, the recommendation is mandatory unless further appeal is made within seven days.
Section 20.9 of the Civil Service regulations provides as follows:
20.9 Actions. * * *-
(b) Reassigwments to Gontirmmg positions in local commuting area. Reassignment is required in lieu of separation or furlough, within the local commuting area, without interruption to pay status whenever possible, to an available position for which the employee is qualified, unless a reasonable offer of reassignment is refused. No displacement will be required to permit the reassignment of an employee unless such employee is qualified to perform the duties of the position in question without undue interruption to the work program: Provided, however, That in reassignments to other positions, in a reduction in force, employees will not be given physical examinations unless the positions to which reassignment is contemplated are arduous duty positions or unless the duties of the positions are such that physical deficiencies might endanger human life or result in serious property damage. No employee whose reassignment is proposed to the class of position indicated shall be disqualified on physical grounds unless the proposed disqualification has the prior approval of the Central Office of the Commission, if the positions are in the departmental service in Washington or the appropriate regional director, if in the field service. Subj ect to these conditions, reassignment is required in each of the following cases; * * *
*580 An appeal was taken but later withdrawn by the Boston regional office on July 10,1952.
Thus, under the decision of the First TJ. S. Civil Service Regional Office, plaintiff was found to be qualified as a rating specialist (occupational), and since he was a veteran with a higher retention rate than Mitchell (PA-1 as compared to TA-1), he should have at that time been reassigned to the position of rating specialist (occupational) in preference to Mitchell. However, the officials of the Boston regional office did not agree with the decision and made no effort to reassign plaintiff to that position. They were completely aware of the fact that plaintiff could not, because of the personnel ceiling that had been established by the tables of organization, be reassigned to his former position and that if he were so assigned, he could not be properly retained therein.
Therefore, on July 9, 1952, and later on July 16, 1952, the Boston regional office telegraphed the Deputy Administrator of the Veterans’ Administration requesting authority to establish an interim position of rating specialist (legal), GS-12, for 30 days in order to restore plaintiff to his former position. The request was granted on July 21, 1952, and the following day plaintiff was informed he would be reassigned to the newly created position retroactive to June 1, 1952, in accordance with the decision of Jime 20,1952, of the Civil Service Commission; and that this position would be eliminated on August 27, 1952 and plaintiff would be then reassigned to the position of adjudicator in grade GS-9. On July 25, 1952, plaintiff was called into the office of his superior and handed two notices in conformity with the information he received as just above noted. This was all done by the Boston regional office knowing that on June 5, 1952, section 1310[1] of Public Law 253 of the 82d Congress was amended[2] to permit any agency to promote an employee permanently to a position if the promotion would not increase the number of employees holding permanent positions in that grade in the agency above the number in the grade in the same agency prior to September 1, 1950.
*581 In accordance with, that act, on July 11, 1952, .the central office of the Veterans’ Administration sent a telegram to its various regional and other offices stating that the Administrator had approved permanent grade conversions of all the employees with permanent tenure who were serving under indefinite promotion, demotion, or reassignment in retention group TA-1 on July 14,1952, in certain specified grades, including grades GS-11 and 12. Pursuant to this authority, Mr. Mitchell’s indefinite promotion to rating specialist (occupational), GS-12, was concerted from indefinite to permanent and his retention subgroup was changed from TA-1 to PA-1. Also, on July 24,1952, when plaintiff was temporarily restored to duty as a rating specialist, legal, the authorization officer in grade GS-11, whom plaintiff had replaced on May 29, 1952, was restored to his position and his promotion to that position was converted from indefinite to permanent. The result was that plaintiff could not “bump” either Mitchell or the employee whom he had replaced in grade GS-11.
Therefore, it seems clear and the commissioner of this court has. found that the action taken by the Boston regional office of the Veterans’ Administration was not a compliance in good faith with the Civil Service decision of June 20,1952, for the reason the Veterans’ Administration, with full knowledge that plaintiff could not be retained in his former position because of the reduction in force order, failed and refused to consider him for reassignment to the position of rating specialist (occupational), in accordance with section 20.9 of the retention preference regulation of the Civil Service Commission.
The temporary position of rating specialist (legal) was artificially created to prevent plaintiff’s reassignment to the position of rating specialist (occupational), and had the further effect of reducing plaintiff to grade GS-9, three grades below that held by him on May 1,1952, and reducing his salary from $7,840 per annum to $5,810 per annum.
After receiving notice that he would be separated from his temporary position, plaintiff appealed to the First Kegion of the Civil Service Commission in Boston, Massachusetts. *582 In his appeal plaintiff only contended that the Veterans’ Administration had not complied with the Civil Service decision of June 20, 1952. This appeal was denied on September 28, 1952, on the grounds that corrective action had been taken by restoring plaintiff to the position of rating specialist (legal), and further that the Veterans’ Administration was warranted in establishing the rating specialist (occupational), in a separate competitive level from rating specialist (legal). Thereafter, the plaintiff appealed to the Board of Appeals and Review of the Civil Service Commission, Washington, D. C., which was denied on substantially the same grounds. Plaintiff made a request for reconsideration which was also denied. .
The action of the Boston regional office of the Veterans’ Administration in not “reassigning plaintiff to the position of rating specialist (occupational),” in conformance with the original decision of June 20, 1952, was arbitrary and not a compliance in good faith with said decision. Had there been good faith compliance at the time of the June 20, 1952, decision, there could have been no question of interchangeability, because the plaintiff could have and should have been assigned to the position of rating specialist (occupational), at that time. Plaintiff was found to be qualified for the position and the applicable regulations required that he be given the position. The device used by the Boston regional office of the Veterans’ Administration creating a temporary position until Mitchell’s job became permanent, was an exercise of bad faith and prevented plaintiff from obtaining reassignment pursuant to the June 20,1952, decision.
The events occurring after the failure to reassign are of no significance in determining plaintiff’s rights under the facts of this case. The First U. S. Civil Service Regional Office’s affirmance of the Boston regional office’s actions on the ground that the order was complied with, was clearly erroneous, and on the ground of interchangeability was irrelevant and is not binding on this court.
Plaintiff’s request that this court reassign him to the position of rating specialist (occupational), is without merit inasmuch as this court can only render a money judgment. *583 However, the plaintiff is entitled to recover the difference in salary he has received as an adjudicator, grade GS-9, and the salary of a rating specialist (occupational), grade GS-12, from August 28,1952, to date of judgment.
Judgment will be suspended pending the filing of a stipulation showing the amount due»
It is so ordered»
MaddeN, Judge; WhitakeR, Judge; Littleton, Judge; and JONES, Chief Judge, concur.
FINDINGS OP PACT
The court, having considered the evidence, the report of Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
Í. Plaintiff, a citizen of the United States, is a veteran of World War II and lives in Boston, Massachusetts. He is a lawyer by profession and is a member of the Massachusetts Bar and the Federal Bar in Massachusetts. He has been employed continuously for 10 years in the Boston regional office of the Veterans’ Administration. He began that employment as an adjudicator in grade GS-9, and in 1945 was transferred to the position of rating specialist (legal) in grade GS-12. He is now employed as an adjudicator in the same office in the grade of GS-9. He is a permanent civil-service employee with a veteran’s preference.
2. On May 1,1952, plaintiff held the position of rating specialist (legal) on one of the rating boards in the Boston office of the Veterans’ Administration. These boards consisted of three members: a rating specialist (legal), a rating specialist (occupational) and a rating specialist (medical). The primary function of the rating boards is the determination of the degree of service-connected disability of veterans, and the authorized grade for each member of the boards is GS-12, for which an annual salary of $7,840 is provided.
3. Under a regulation issued by the Veterans’ Administration in October 1951, and in force in 1952, the standard position description of a rating specialist (legal), provided in part as follows:
*584 B. Duties.
(1) Incumbent serves as legal member of the board, and as legal consultant to the other members of the-board. As the legal member, is responsible for determinations of basic eligibility, conditions of entitlement,service connection of injury or disease, extra hazardous service, etc. for compensation, pension, hospitalization,, out-patient treatment, prosthetic appliances, loan guaranty, vocational rehabilitation education and training,, etc.
(2) On initial review of cases makes and records decision as to the board’s jurisdiction; determines the regulations, procedures, and legislation applicable to the rating of the claim presented; makes decisions on all legal points presented in the claim; is responsible for the development of all pertinent facts bearing on the legal aspects of the case; resolves the inadequacy of information or conflicting evidence relating to the legal •phase of the case; determines admissibility of evidence.
(3) As legal consultant to other members of the board, makes determinations on the legal aspects of rating and collaborates with other Bating Specialist to arrive at a board decision, reviewing from a legal standpoint the preliminary determinations of the other members in respect to their own specialties, either concurring in-such determinations or disagreeing with them and resolving differences of opinion through board deliberations; advises the board as to its jurisdiction; as to the admissibility of evidence; as to the proper application of the provisions of all regulations, procedure, approved legal and administrative decisions and legislation applicable to the rating of. the claim. Is responsible for advising in all inquiries from a legal point of view and explaining any action of the board; advises and instructs the other members in regard to new legislation, extensions, to the disability rating schedule, procedural changes in the Standard Disability Bating Code Manual and Adjudication Field Procedure Manual; advises and makes recommendations to superiors on the advisability of procuring advisory opinions or new precedents from higher authority.
Under a regulation issued in October 1951, and also in force in 1952, the standard position description of a rating specialist (occupational) provided in part as follows:
B. Duties.
*585 (1) Incumbent serves as occupational member of the board, and as occupational consultant to the other members of the board. As the occupational member, is responsible for determinations of basic eligibility, conditions of entitlement, service connection of injury or disease, extra-hazardous service, etc., for compensation, pension, hospitalization, out-patient treatment, prosthetic appliances, loan guaranty, vocational rehabilitation education and training, etc.
(2) On initial review of cases makes and records decision on all occupational matters presented in the claim; is responsible for the development of all pertinent facts bearing on the occupational aspects of the case; resolves the inadequacy of information or conflicting evidence relating to the occupational phase of the case.
(3) As occupational consultant to other members of the ooard, makes determinations on the occupational aspects of rating and collaborates with other rating specialists to arrive at a board decision reviewing from an occupational standpoint the preliminary determinations of the other members in respect to their own specialities, either concurring in such determinations or disagreeing with them and resolving differences of opinion through board deliberations; advises the board as to the occupational or industrial aspects of the case as disclosed by the evidence; advises relative to physical and.mental requirements and demands of the veteran’s occupation, and the requirements and demands of other vocations which he could be expected to pursue by virtue of his educational background, training and experience; advises on employment opportunities in non-service connected permanent and total pension cases, and whether substantially gainful employment may be obtained and maintained under circumstances of advanced age or physical handicap; is required to make known deficiencies in the Eating Schedule revealed to him by his knowledge of various fields of employment which indicates to him the degree of impairment assigned by the Schedule in a particular case is not truly representative of the reduction in earning capacity sustained by the average person and should therefore be adjusted; is responsible for advising in all inquiries from an occupational point of view and explaining any action of the board; advises and instructs other members of the board in regard to the Disability Eating Schedule and extensions thereto from an occupational viewpoint; *586 advises and makes recommendations to superiors on tbe advisability of procuring advisory opinions on new precedents from higher authority.
4. The official position descriptions for the three members of a rating board contemplated that each member would perform functions and duties according to his specialty, the legal member being concerned with legal questions, the medical member with medical aspects of the disability involved, • and the occupational member with the training ability and experience of the veteran for a particular trade, business, or occupation. However, in the Boston regional office, the legal and occupational rating specialists frequently operated interchangeably as members of rating boards. All three members of the board signed decisions, but often two legal members would sign a decision with a medical member, one of the legal specialists signing in the capacity of an occupational specialist.
From 1937 to 1944 plaintiff was employed by the Massachusetts State Employment Service, and after he entered the service of the Veterans’ Administration, plaintiff frequently served in the capacity of an occupational rating specialist on rating boards in the Boston regional office during a period of seven years prior to May 1,1952.
During April 1952, a change was made in the procedure followed by rating boards in the Boston office in that, before the board convened to render a decision, each member was required to write a brief or memorandum covering the legal, medical, or occupational aspects of the case under consideration. The brief covered the aspects of the case falling within the particular specialty of the member as provided for in the standard position descriptions.
5. On March 28,1952, the Veterans’ Administration, Washington, D. C., sent a letter to the managers of all regional offices regarding adjusted tables of organization and personnel limitations based on the President’s budget for the fiscal year 1953. Attached to the letter was a new table of organization applicable to the Boston regional office, reducing the number of rating boards in that office from nine to eight. The letter provided in part as follows:
*587 Employment must be brought within the revised ceilings not later than June 30,1952. Reductions will be accomplished by normal attrition to the fullest extent possible consistent with workload requirements; however, in order that Fiscal Year 1952 funds may be utilized for the payment of terminal leave, necessary reduction in force notices will be issued to affected employees not later than May 1,1952.
Managers will see that Personnel Officers are notified not later than Tuesday, April 15, 1952, which positions are to be eliminated. Employees to whom reduction in force notices are issued will be retained in an active duty status for 30 full calendar days. Separation action for employees receiving notices on May 1, 1952, will be effective as of the close of business May 3.1, 1952. Reassignments resulting from notices of separation must be accomplished so as to result in any necessary separation actions becoming effective on or before June 30,1952, in order that terminal leave payments may be made from Fiscal Year 1952 funds. In accordance with VA policy, employees reached for separation will not be furloughed.
6. When the letter of March 28, 1952, was received in the Boston office, there were nine rating boards in that office. Serving on these boards were nine rating specialists (legal) and nine rating specialists (occupational). The new table of organization allowed for a maximum of eight rating specialists (legal) and eight rating specialists _ (occupational), the revised ceilings to become effective not later than June 30, 1952.
Prior to the time reduction-in-force notices were issued, one occupational member of a rating board entered military service so that on May 1, 1952, there were nine rating specialists (legal) and eight rating specialists (occupational) employed in the Boston regional office.
7. On April 8, 1952, the central (Washington, D. C.) office of the Veterans’ Administration wrote the regional offices regarding the reduction in the number of rating specialists (legal) and rating specialists (occupational) to be employed in such offices and called attention to the fact that on June 8, 1951, in a case appealed by a rating specialist (occupational) at Detroit, Michigan, the Civil Service Commission had ruled that the positions of rating specialist *588 (legal) and rating specialist (occupational) were interchangeable and should be placed on one competitive level for reduction-in-force purposes. The letter further read in part as follows:
2. The Commission’s decision was based on the finding that incumbents of the positions of Hating Specialist, Legal, and Eating Specialist, Occupational, were operating interchangeably. The Commission has instructed its Eegional Directors to consider representations from this agency where the incumbents of these positions are, in fact, operating on a non-interchangeable basis at the time of the reduction in force action. They have also been told that if in these cases the Veterans’Administration can establish to the complete satisfaction of the Eegional Directors that there was a sufficient lack of interchangeability to warrant putting the positions in separate competitive levels, the cases, fully documented, should be submitted to the Central Office of the Civil Service Commission for review before any decision is issued by the Eegional Directors.
3. Your attention is invited to the current Standard Position Descriptions 8-148 (Eating Specialist, Legal) and 8-151 (Eating Specialist, Occupational) and a personal and confidential letter you received from the Assistant Administrator for Claims dated November 5, 1951, subject: Eevised position descriptions for Eating Board members. Before making your decision as to the appropriate competitive level or levels for the position of Eating Specialist, Legal, and Eating Specialist, Occupational, it is necessary that a review be made of the manner in which the incumbents of these positions are performing their respectively described duties.
4. When it is determined that the distinct duties and responsibilities are being performed as prescribed in SPD 8-148 and 8-151, and as directed in the aforementioned letter from the Assistant Administrator for Claims, it would mean that there is no interchangeability and two separate competitive levels should be used. However, should it be established that the two positions are in fact operating interchangeably, one competitive level should be utilized in the current reduction in force in accordance with the above-mentioned decision of the Civil Service Commission. It will be the responsibility of the Manager to bring sufficient factual information to the attention of the Eegional Director of the Civil Service Commission for his consideration in the event of appeal.
*589 8. When the above-quoted letter was received, there was a discussion in the Boston regional office with respect to the duties being performed by the rating specialists in that office and, as a result thereof, the regional manager approved a memorandum which read in pertinent part as follows:
2. The conclusion reached as a result of this discussion is that the duties and responsibilities of Bating Specialists (Legal) are being performed as prescribed by SPD 8-148 and those of Bating Specialist ’(Occupational) are being performed as prescribed by SPD 8-151 and as directed by letter from the Assistant Administrator for Claims dated November 5,1951, which means that there is no interchangeability and that two separate competitive levels should be used for the purpose of BIF. Our review of the manner in which incumbents of these positions are performing their duties indicates that the method outlined in paragraph 4 of the Assistant Administrator’s letter is that which should be followed; in other words, two separate competitive levels should be established.
3. In order to eliminate any confusion as to interchangeability of Bating Specialists (Legal and Occupational), it is desired to point out that Bating Specialists (Legal), when qualified on the basis of experience or previous training, have been reassigned as Bating Specialists (Occupational). However, Bating Specialists (Occupational) are not and cannot be reassigned as Bating Specialists (Legal) unless they have legal training and are members of the Massachusetts Bar, so that there is a sufficient lack of interchangeability to prevent putting the two positions in one competitive level.
9. Pursuant to the memorandum approved by the manager, the Boston regional office established separate retention registers for rating specialists (legal) and for rating specialists (occupational), whereas prior to April 15, 1952, a single retention register for persons holding these positions had been maintained. On the retention register for rating specialists (legal) plaintiff was No. 9, the last man on the list and he had the lowest retention credits. As of April 30, 1952, plaintiff’s service in the Veterans’ Administration amounted to 10 years, 3 months, and 29 days, and he had 11 retention credits. On the retention register for rating specialists (occupational) Emlyn V. Mitchell was No. 8, the last man on the list and the man with the lowest retention credits. *590 As of April 30,1952, Mr. Mitchell’s service in the Veterans’ Administration amounted to 9 years, 6 months, and 9 days, and he had 10 retention credits. Plaintiff’s retention subgroup was PA-1, a symbol meaning a permanent civil-service employee with veteran’s preference. Mr. Mitchell’s retention subgroup was TA-1, a symbol which refers to a temporary or indefinite status held by a civil-service employee with veteran’s preference. Mr. Mitchell had been promoted from a lower grade in which he had a permanent status, the promotion being indefinite on account of the provisions of Section 1310, Public Law 253, 82nd Congress, known as the Whitten Amendment (65 Stat. 757).
10. Following the receipt of the letter of March 28,1952, from the central office, the Boston regional office started reduction-in-force actions in order to bring its personnel within the ceilings established by the new table of organization. The reduction in force covered about 75 positions in the Boston office, including one rating specialist (legal). Since plaintiff had the lowest rating on the retention register for rating specialists (legal), he was given a reduction-in-force notice on May 1, 1952, stating that he would be separated from his position as of the close of business on May 31,1952.
11. At the time he received the notice of May 1,1952, plaintiff was orally informed by one of the personnel officers that he would be offered the position of authorization officer in grade GS-11. During the preceding seven years, plaintiff had frequently performed the duties of a rating specialist (occupational) on rating boards in the Boston office. Therefore, he protested the proposed reassignment to the position of authorization officer and contended that he should be reassigned to the position held by Mr. Mitchell, since that employee was in a temporary status and had less retention credits than plaintiff. Plaintiff took the position that he was qualified to fill the position of rating specialist (occupational) and pointed out that, in the past, the Boston office had followed the practice of listing the legal and occupational specialists on one retention register, since their duties had been performed interchangeably.
Upon being informed that the Boston regional office had provided separate retention registers for rating specialists *591 (legal) and rating specialists (occupational), plaintiff contended that the Veterans’ Administration was required by regulations of the Civil Service Commission to separate Mr. Mitchell and to reassign plaintiff to the position of occupational specialist, because plaintiff was qualified for the position and had more retention credits than Mr. Mitchell, whom the Veterans’ Administration proposed to retain in the position held by him.
On May 2, 1952, plaintiff appealed to the First United States Civil Service Region.
12. On May 19,1952, plaintiff accepted the position of authorization officer, and on May 29,1952, he was given a notification of personnel action, which showed his change of position from rating specialist (legal) to authorization officer, and his change in grade from GS-12 at $7,840 per an-num to GS-11 at $6,940 per annum. At that time, there was no vacancy in the position of authorization officer in the Boston office, and it was necessary for plaintiff to “bump” .another authorization officer, who was in retention subgroup TA-1.
13. In his letter of appeal to the Civil Service Commission, plaintiff contended that there was a vacancy in the position of rating specialist (occupational) for which he was fully qualified; that the Veterans’ Administration proposed to fill this vacancy with an employee who had less retention credits than plaintiff; that plaintiff had performed the duties of rating specialist (occupational) interchangeably with the duties of rating specialist (legal) for the preceding seven years; that the two positions had been maintained on a single competitive level on all previous occasions when reductions in force had been made, and that under the circumstances the offer to plaintiff of a position in a lower grade was unreasonable.
14. On June 3, 1952, a hearing on plaintiff’s appeal was held by the First United States Civil Service Regional Office at which hearing plaintiff and certain officials of the Veterans’ Administration appeared and testified. At the hearing, plaintiff did not raise the issue of the interchangeability of the positions of legal and occupational rating specialists in the Boston office, or the issue of the separate *592 retention registers promulgated for these positions. He based his appeal primarily on the contentions that he was qualified for the position of rating specialist (occupational) ; that, under Section 20.9 of the Retention Preference Regulations of the Commission, he was entitled to be reassigned to that position in preference to Mr. Mitchell, an employee in a lower retention subgroup; that a failure to reassign him to that position was a violation of the regulations, and that the agency’s offer of a position in a lower grade was not a reasonable offer.
Representatives of the Veterans’ Administration present at the hearing conceded that plaintiff was sufficiently qualified as an occupational specialist to be assigned to that position if a vacancy existed. However, they contended that he was not sufficiently qualified, without special training, to displace an occupational specialist when no vacancy existed.
Plaintiff’s appeal was sustained by the first regional office of the Civil Service Commission, which issued its decision in writing on June 20,1952, as follows:
Reference is had to the appeal of Joseph J. Kelly filed with this office from your action involving his reduction in force.
Mr. Kelly appealed specifically from the reassignment involving his change to lower grade from Rating Specialist, Legal, GS-12, to Authorization Officer, GS-11, contending that that was not a reasonable offer as there was being retained an employee in a lower retention subgroup in a position of Rating Specialist, Occupational, GS-12, for which he was qualified which would not have required a reduction in grade.
In response to our inquiry your office advised that Mr. Kelly was not found to meet all of the qualifications to “bump” a TA-1 employee holding the position of Rating Specialist, Occupational, GS-12. This office secured a Form 57 from Mr. Kelly, and at his request a hearing was held in this office on June 3, 1952. It was contended in behalf of the agency at our hearing that recent instructions from the Central Office of the Veterans Administration have directed the reorganization of rating boards so as to increase the importance of the occupational factors in disability ratings; that this came about as a result of a finding by the Central Office of the Civil Service Commission in an appeal that the *593 duties heretofore performed by Eating Specialists, Legal, and Eating Specialists, Occupational were indistinguishable. It was agreed that since 1943 or 1944 Eating Board Members, both Legal and Occupational, have been performing the same functions and have been assuming the identical responsibilities. This situation, however, your representative contended resulted in inadequate consideration of the occupational factors; and that with the issuance of revised standard position descriptions transmitted on November 5, 1951, the Eating Specialists, Occupational, were to definitely assume the responsibilities for the occupational factors involved in determining disability ratings; and that the Legal members would devote themselves to the legal factors. It was further contended that because of this new approach Mr. Kelly was not believed to be qualified to assume the position of Eating Specialist, Occupational, although it was conceded that he did meet the requirements set forth in the examination specification.
Mr. Kelly’s Form 57 reveals that in addition to having served as a Eating Board Member during the past 7 years performing the same duties as Eating Specialists, Occupational, have been performing, he served for over 6 years as a Principal Interviewer for the Massachusetts State Employment Service and the U. S. Employment Service. At that time his record shows that he engaged in interviewing of job applicants, referring applicants to job openings, placing physically handicapped, and other similar duties. With this background we must conclude that Mr. Kelly is certainly no less qualified to hold the position of Eating Specialist, Occupational, than any of the Eating Specialists, Occupational, who have served in your office during the past 7 years. In arriving at this decision we are not indicating that the two positions of Eating Specialist, Legal, and Eating Specialist, Occupational, shall continue to be considered in a single competitive level. It is our view that because of the manner in which the Boards have operated Mr. Kelly is qualified to assume the duties of the position of Eating Specialist, Occupational, and to perform those duties without the need for special training; that he has the necessary background to enable him to be an occupational consultant to the other board members as contemplated in the revised position description by virtue of his background in the Employment Service and as a board member for so long a period of time while Legal members and Occupational members served interchangeably.
*594 It is accordingly the decision of this office that Mr. Kelly’s reassignment involving a reduction in grade was not a reasonable one and cannot be approved. It is therefore recommended that he be restored to his former position retroactively to the date of his change to lower grade; and if he may not be properly retained therein, that he be considered for reassignment in accordance with Section 20.9 and the contents of this letter. Your attention is kindly invited to the provisions of Section 20.15 of the Retention Preference Regulations which makes the recommendation of this office mandatory unless further appeal is made to the TJ. S. Civil Service Commission, Washington, D. C., within seven (7) days from date of receipt of this letter. Please notify this office of action taken within seven (7) days.
15. The Boston regional office appealed from the foregoing decision but was directed by the Washington, D. C. office of the Veterans’ Administration to abandon the appeal and abide by the decision. Accordingly, the Boston regional office gave written notice on July 10, 1952, that it had abandoned its appeal.
16. The officials of the Boston regional office did not agree with the decision that plaintiff was fully qualified to perform the duties of rating specialist (occupational) and made no effort to reassign him to that position. They were completely aware of the facts that plaintiff could not, because of the personnel ceiling that had been established by the tables of organization, be reassigned to his former position and that if he were so assigned, he could not be properly retained therein. However, on July 9, 1952, the Boston regional office sent the following telegram to the central office in Washington, D. C.
REURTEL JULY 3, 1952, 5EO, AND MYTEL OE JUNE 26, 1952, REQUEST AUTHORITY TO INCREASE CEILING OE ADJUDICATION DIVISION BY ONE TO ESTABLISH AN INTERIM POSITION OE RATING SPECIALISTS (LEGAL) GS-12, EOR THIRTY DAYS IN ORDER TO RESTORE JOSEPH J. KELLY, AUTHORIZATION OFFICER GS-11, TO HIS EORMER POSITION AS DIRECTED BY THE DIRECTOR, FIRST U. S. CIVIL SERVICE REGION
The request was repeated in a subsequent telegram of July 16,1952, and on July 21,1952, the Deputy Administrator of the Veterans’ Administration authorized an increase in the *595 personnel ceiling to provide for one additional position of rating specialist (legal) GS-12 in the Boston regional office for a period of 60 days. On the following day, July 22, 1952, plaintiff was informed by the personnel director of the Boston office that he would be reassigned to the newly created position of rating specialist (legal) retroactively to June 1, 1952, in compliance with the decision of June 20, 1952, of the Civil Service Commission; that this position -would be eliminated on August 27,1952, and plaintiff would then be reassigned to the position of adjudicator in grade GS-9.
17. On July 25,1952, plaintiff was called into the office of his superior and handed two notices. The first, which was dated July 24, 1952, stated that plaintiff was restored to •duty, effective June 1, 1952, as rating specialist (legal) in :grade GS-12, in accordance with the Civil Service Commis•sion letter of June 20, 1952. The second was a notice of reduction in force dated July 25, 1952, stating that plaintiff would be separated from his position as rating specialist (legal) at the close of business on August 27, 1952. As a -result of these actions, the reduction-in-force notice of May 1, 1952, was canceled, and plaintiff was paid retroactively to June 1,1952, as rating specialist (legal) GS-12. The duration of this temporary position was 2 months and 27 days.
18. During the period from May 1, 1952, when plaintiff was separated from his position as rating specialist (legal), to July 14, 1952, the Boston regional office retained Emlyn V. Mitchell, an employee in retention group TA-1 in the position of rating specialist (occupational).
On June 5, 1952, Section 1810 of Public Law 253 of the 82nd Congress was amended to permit any agency to promote - an employee permanently to a position if the promotion would not increase the number of employees holding permanent positions in that grade in the agency above the number in the grade in the same agency prior to September 1, 1950 (66 Stat. 122). In accordance with that act, the central • office of the Veterans’ Administration on July 11,1952, sent a telegram to its various regional and other offices, stating -that the Administrator had approved permanent grade conversions of all the employees with permanent tenure who *596 were serving under indefinite promotion, demotion, or reassignment in retention group TA-1 on July 14, 1952, in certain specified grades, including grades GS-11 and 12. Pursuant to this authority, Mr. Mitchell’s indefinite promotion to rating specialist (occupational) GS-12 was converted from indefinite to permanent, and his retention subgroup was changed from TA-1 to PA-1 on July 14,1952.
On July 24, 1952, when plaintiff was temporarily restored to duty as a legal rating specialist, the authorization officer in grade GS-11, whom plaintiff had replaced on May 29, 1952, was restored to his position as authorization officer in grade GS-11; his promotion to that position was converted from indefinite to permanent, and his retention subgroup was changed from TA-1 to PA-1.
19. On July 25, 1952, when plaintiff was notified that he would be separated from his temporary position as rating specialist (legal) at the close of business on August 27,1952, the personnel officer of the Boston office prepared a retention register for rating specialists (legal), showing that plaintiff was No. 9 on the list and, as already stated, the number of rating specialists (legal), which the Boston office was authorized to employ was eight.
As a result of the promotions described in the preceding finding, the new retention register for occupational specialists showed that Mr. Mitchell was then in retention subgroup PA-1. Likewise, the new retention register for authorization officers in grade GS-11 showed that the employee whom plaintiff had replaced on May 29, 1952, was also in retention subgroup PA-1. Therefore, plaintiff was advised that he could not “bump” either of these employees and that the best offer the Boston regional office could make him at that time was the position of adjudicator in grade GS-9. Plaintiff accepted this position on August 18, 1952, without waiver of his appeal rights.
On August 28, 1952, plaintiff was given a notification of personnel action showing his change of position from rating specialist (legal) in grade GS-12 to adjudicator in grade GS-9 and a change in his salary from $7,840 per annum to $5,810 per annum. Plaintiff was not severed from the rolls during this second reduction-in-force procedure, because he *597 had accepted the position of adjudicator before the effective date of his separation from his temporary position of rating specialist (legal).
20. After receiving the notice of July 25,1952, to the effect that he would be separated from his temporary position on August 27, 1952, plaintiff appealed in writing to the first region of the Civil Service Commission in Boston, Massachusetts. In his appeal, plaintiff contended, in substance, that the Veterans’ Administration had not complied with the Civil Service Commission decision of June 20,1952, because it was known at the time the decision was rendered that he could not be properly retained in his former position of rating specialist (legal); that it was incumbent upon the Veterans’ Administration to assign him to the position of rating specialist (occupational) since he was in a higher retention subgroup than a rating specialist in a TA-1 lesser subgroup; that the Civil Service Commission had found that he was qualified to perform the duties of rating specialist without the necessity of special training, and that the action of the Veterans’ Administration in securing a temporary increase in the table of organization for the purpose of restoring him to his former position for a short period of time was tantamount to a circumvention of the order issued by the Commission. Plaintiff’s appeal was denied on September 23,1952, by the first region of the Civil Service Commission in a decision which read as follows:
Eeference is had to your appeal filed with this office from action of the Veterans’ Administration, Boston Eegional Office, involving your reduction in force, in which a hearing was held on August 14,1952.
The first issue raised in your appeal deals with the question of your restoration to duty following your previous appeal decided in your favor on June 20,1952. At that time this office found that your reassignment involving a reduction in grade was not a reasonable one and could not be approved as there was at the time of the effective date of your reduction in force a position of Eating Specialist, Occupational GS-12 which would not have involved any reduction in grade for which you were qualified filled by a lower retention sub group employee, namely in TA-1. We then recommended restoration to your former position retroactively to the date of your *598 change to lower grade and if you could not be properly retained therein that you be considered for reassign-, ment in accordance with Section 20.9 and the contents of our letter. Although the Veterans’ Administration-first appealed our decision, they later withdrew the ap-appeal and proceeded to take corrective action. Authority was secured by the Boston Regional Office, to establish an additional position of Rating Specialist,. Legal GS-12, similar to your former position, and. you were restored thereto effective June 1, 1952, by notification of personnel action, dated July 24, 1952. On the-day following, July 25, 1952, you were again issued a reduction in force notice, and on failure to offer you reassignment to the position of Rating Specialist, Occupational, you appealed to this office.
On July 24, 1952, the Central Office of the Veterans’' Administration authorized the Boston Regional Office to effect conversion from temporary promotion. to-permanent promotion in certain grade levels including Grade GS-12, under authority of Section 1802 of the third supplemental Appropriation Act of 1952. Acting under this authorization, the Boston Regional Office-converted the temporary promotion of the Rating Specialist, Occupational GS-12, Mr. Mitchell to permanent,, thus changing his retention sub group from TA-1 to PA-1, the same sub group as yours, so that when you were given your notification of personnel action effecting your restoration to the position of Rating Specialist, Legal and your second reduction in force notice, that position was no longer held by an employee in a lower retention sub group.
In your appeal, you contended that your retention rights became fixed and vested on the effective date of your first reduction in force, June 1,1952, that you were then entitled to be retained in Mr. Mitchell’s position in preference to him, that it was so adjudicated in our decision on your first appeal, and that any subsequent changes could not and should not affect your retention rights, that the Veterans’ Administration should have restored you to Mr. Mitchell’s position because you could not be retained in your previous position, that its failure to do so was not in compliance with our decision on your first appeal, that the agency’s action was in effect giving retrospective effect to the revised law on temporary promotions which is looked upon with disfavor in our jurisprudence.
This office has carefully considered your contentions. It is our opinion that upon your restoration to duty as *599 Eating Specialist Legal, GS-12, effected on July 24, 1952, retroactive to June 1,1952, the date of your change to lower grade which we disapproved, corrective action in your case was completed. Any question of your further retention rights were then to be determined in accordance with the relative retention standing of employees in competition with you at the time of your latest reduction in force notice and the existence or non existence when that latest proposed action is made effective, of one or more positions meeting the conditions prescribed under Section 20.9. Because of the conversion of Mr. Mitchell’s promotion from temporary to permanent which had occurred meanwhile under authority of the latest Whitten Amendment, Section 1302, of the third supplemental appropriation 1952 placing him in retention PA-1, his was no longer a position held by an employee in a lower retention sub group, and the latest action in your case was no longer in deprivation of your reassignment rights under Section 20.9 of the Retention Preference Regulations.
Turning to the second issue in your appeal, which was your contention that your competitive level was unduly narrow and should have included positions of Rating Specialist, Occupational, GS-12, that if they were included you would not be within reach for reduction in force, we have carefully considered all of the evidence presented at your hearing and the results of a desk audit conducted by a representative of this office. We find that the two positions are not sufficiently similar so that interchange of personnel is feasible. First, in establishing competitive levels which is based on the feasibility of interchange of personnel among positions of the same grade, the Federal Personnel Manual states that the position is the employee’s official position, the one in which he is carried on the rolls and paid. Thus we are led to examine the official position descriptions SPD 8-148 for Rating Specialist, Legal, dated October 1951, and SPD 8-151 of October 1951 for Rating Specialist, Occupational. A review of these two descriptions leads us to conclude that they are not sufficiently similar so that interchange of personnel is feasible. You contended that the Boston Regional Office, Adjudication Division, is not operating as indicated in these C’fcions and with its number of employees and case could not so operate. Our desk audit revealed that your allegation was partly true but that in certain respects there were differences in the contributions of the Legal Member and the Occupational Member to rating actions, namely in the “briefs” prepared by those two *600 members, and in the rating of non service connected pension cases, that in the former the legal member’s brief is in effect a certification that the case has been rated in accordance with governing law and regulations whereas the occupational member’s brief relates to the veteran’s occupational history. In the latter cases, non service connected pensions, Part III cases representing about 9% of the case load, prospects of employability is a rating factor in the consideration of which, the occupational member is looked upon as the specialist member of the Board. We also found one other type of case involving nervous disorders • where the occupational member is called upon for specialist’s services. In view of all of these factors, we are of the opinion that the members are functioning with due regard to their respective specialties distinct from each other in certain types of cases so that the Veterans’ Administration was warranted in establishing the Eating Specialist, Occupational, in a separate competitive level from Eating Specialist, Legal.
On the basis of the foregoing analysis, it is the considered opinion of this office that the action of the Veterans’ Administration in your case was not in violation of the Commission’s regulations and may not be disapproved for the reasons stated in your appeal. We deeply regret that a more favorable reply is not possible.
Thereafter, plaintiff appealed to the Board of Appeals and Eeview of the Civil Service Commission, Washington, D. C., which, in a decision dated May 29,1953, denied plaintiff’s appeal on substantially the same grounds as set forth in the decision of September 23, 1952, by the First United States Civil Service Eegion. On October 27,1953, plaintiff made a further request for reconsideration and an opportunity to appear personally before the Commission, but this request was denied. Plaintiff has exhausted his administrative remedies.
21. During the period involved in this action, plaintiff got along well with his fellow-workers and with his superiors. The evidence does not establish that the actions complained of by plaintiff were due to ill-will or malice on the part of any of his superiors toward him. However, the action taken by the Boston regional office of the Veterans’ Administration was not a compliance in good faith with the Civil Service Commission decision of June 20, 1952, because the Veterans’ Administration, with full knowledge that plaintiff could not *601 be retained in bis former position, failed and refused to consider him for reassignment to the position of rating specialist, (occupational) in accordance with Section 20.9 of the Retention Preference Regulations of the Civil Service Commission. The device employed by the Boston regional office, i. e., requesting a new position for a temporary period with the preconceived plan of removing plaintiff therefrom at the end of such temporary period, circumvented the Commission’s decision and deprived plaintiff of the position of' rating specialist (occupational) in grade GS-12, which the' Commission held he was qualified to fill without further-training.
Although the promotion of other employees, as described in finding 18, was made on general authority and without reference to plaintiff’s case, the fact that these promotions- and changes occurred while plaintiff was temporarily serving in the position that was artificially created to avoid his reassignment to the position of occupational rating specialist-,, had the further effect of reducing him to a position in grade GS-9, three grades below that held by him on May 1, 1952, and of reducing his salary from $7,840 per annum to $5,810 per annum.
22. In this action, plaintiff claims the difference between the salary he has received as an adjudicator, grade GS-9,. and the salary paid a rating specialist (occupational), grade GS-12, from August 28, 1952 to date of judgment.
As stated in preceding findings, the salary paid at the Boston regional office to a person employed as a rating-specialist (legal) or as a rating specialist (occupational) was- and is $7,840 per annum and the salary paid to a person employed as an adjudicator, grade GS-9, was and is $5,810 per annum. In addition, plaintiff claims the sum of $600 as the estimated amount of expenses incurred and to be-incurred by bim for legal services, travel expenses and stenographic fees in connection with the prosecution of his appeals to the Civil Service Commission and of the action in this court. Before the suit was filed, plaintiff paid one attorney the sum of $100, but the evidence is insufficient to establish plaintiff’s expenditures on the other items included in his-estimate.
*602 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover.
Entry of judgment is suspended pending the filing of a stipulation showing the amount due the plaintiff in accordance with this decision.
In this case in accordance with the opinion of the court and on a stipulation by the parties showing the amount due thereunder, on May 1, 1956, judgment for the plaintiff was entered for $8,078.05.

 65 Stat. 757.

 66 Stat. 122.